**IT IS ORDERED as set forth below:**



**Date: March 14, 2019**

_____
**Paul Baisier
U.S. Bankruptcy Court Judge**

_____

# UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | | |
|---|---|---|
| In re: | : | CASE NO. **18-62589-PMB** |
| **GEORGE LOUIS SCHALL**, | : | |
| | : | CHAPTER 7 |
| Debtor. | : | |
| | : | |
| **JENNIFER HOTZ SCHALL,** | : | |
| Plaintiff, | : | |
| | : | ADVERSARY PROCEEDING |
| v. | : | |
| | : | NO. **18-5232** |
| **GEORGE LOUIS SCHALL,** | : | |
| Defendant. | : | |

## ORDER GRANTING
## PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

This matter is before the Court on *Plaintiff's Motion for Summary Judgment* filed on December 6, 2018 (Docket No. 7)(the "Motion") along with a *Brief in Support*, *Statement of*

*Material Facts as to Which There Is No Genuine Issue to be Tried* (the "Statement of Facts"), and an *Affidavit* of Plaintiff Jennifer Hotz Schall (the "Plaintiff's Affidavit")(Docket Nos. 8, 9, & 10, respectively). Plaintiff named above (the "Plaintiff") commenced the above-styled Adversary Proceeding (the "Adversary Proceeding") on September 24, 2018, through the filing of a *Complaint Objecting to Dischargeability of Debt* (Docket No. 1)(the "Complaint").[1] The Plaintiff is the former spouse of the Defendant-Debtor (the "Debtor"). The Plaintiff seeks a declaratory judgment under 28 U.S.C. § 2201 determining certain obligations (collectively, the "Subject Obligations", as further defined below) provided in a Settlement Agreement dated May 18, 2012 (the "Settlement Agreement")(attached to Complaint as Exhibit B),[2] and incorporated into a Final Judgment and Decree of Divorce entered by the Superior Court of Fulton County, Georgia and dated June 13, 2012 (the "Judgment")(Civil Action File No. 2010CV180564)(attached to Complaint as Exhibit A), are nondischargeable under 11 U.S.C. §§ 523(a)(5) and 523(a)(15). The Debtor filed *My Response to Adversary Action* regarding the Complaint on October 23, 2018 (Docket No. 5)(the "Response"). Subsequently, he filed a response to the Motion on January 24, 2019, evidently *pro se*.[3] Although the Debtor did not file a separate written response regarding

---

[1] This Chapter 7 case was closed, and the discharge entered, on November 16, 2018 (*See* Main Case Docket No. 24). The Debtor filed a new case under Chapter 13 on December 14, 2018. *See* Case No. 18-71012-PMB. The Court scheduled a status conference to consider the effect of the automatic stay, if any, on this case (Docket No. 17). Before it was held, however, the subsequent case was dismissed on March 7, 2019, mooting that issue. As a result, the status conference was not held.

[2] The Settlement Agreement was amended by Consent Order on August 13, 2012. (Attached to the Complaint as Exhibit C)(the "Amended Agreement").

[3] *See Answer to Brief in Support of Plaintiff's Motion for Summary Judgment* (Docket No. 15)(the "Debtor's Response"). On March 1, 2019, the Court entered an *Order Granting Motion to Withdraw from Case* regarding Debtor's former counsel, Rickman & Associates, PC (*see* Docket No. 22).

2

the Statement of Facts filed by the Plaintiff, the Debtor does challenge factual assertions contained in the Motion in his pleadings.[4]

As set forth in the Statement of Facts (¶ 5), the Subject Obligations are summarized as follows:

1. *Payment of College Education Expenses*. The Debtor is required to pay the college expenses of the Plaintiff and Debtor's child.[5] (Settlement Agreement, p. 6, § (i))(the "College Expense Payments");

2. *Purchase of Car for Minor Child.* The Debtor is required to purchase a car for their child, and the Plaintiff shall have no financial obligation for such purchase. (Settlement Agreement, p. 7, § (j))(the "Car Purchase");

3. *Equitable Division of Property – Debts.* The Debtor shall pay and satisfy a student loan debt in Plaintiff's name as long as he is able making all minimum payments, and Debtor agrees to indemnify and hold Plaintiff harmless for same. (Settlement Agreement, p. 14, ¶ 15)[6](the "Student Loan Debt"); and,

4. *Equitable Division of Property – Cash Payments to Wife.* The Debtor shall pay Plaintiff payments totaling $1,308,000.00. (Settlement Agreement, p. 11, ¶ 11)(the "Cash Payments to Plaintiff").[7]

The Plaintiff contends that the Debtor is currently in default with respect to the Subject Obligations. *See* Statement of Facts, ¶¶ 6 and 7.[8] In particular, the Plaintiff alleges that the

---

[4] Local Rule BLR 7056-1(a)(2) provides that "[a]ll material facts contained in the moving party's statement that are not specifically controverted in respondent's statement shall be deemed admitted." BLR 7056-1(a)(2)(N.D. Ga.). The Debtor's Response was untimely (*see* BLR 7007-1(c)), but the Court will consider it nevertheless.

[5] The parties have one child who became eighteen (18) years old in May of 2017 and is a student at Auburn University.

[6] The enumeration of paragraphs in the Settlement Agreement only begins with Paragraph 9 on Page 10.

[7] The payment schedule was modified in the Amended Agreement. In the revised payment schedule, the Debtor was ordered to make monthly payments of $10,000.00 with scheduled lump sum payments of $100,000.00. Further, of the total amount the Debtor is to pay, the sum of $8,000.00 is stated to represent child support for May, June, July, and August of 2012.

[8] The Plaintiff further states that she filed an Application for Contempt Citation prior to the commencement of this chapter 7 bankruptcy case. (Copy attached to Complaint).

3

Debtor: (i) has not paid the College Expense Payments; (ii) has not provided title to the vehicle driven by their child consistent with the Car Purchase obligation nor has he maintained insurance on the vehicle; (iii) has not made the full lump sum payment of $100,000.00 to Plaintiff and stopped making the $10,000.00 monthly payments in connection with the Cash Payments to Plaintiff; and (iv) has not paid the Student Loan Debt and owes at least $46,789.59 on this obligation.

In his Response, the Debtor does not deny that he owed the Subject Obligations. The Debtor admits that he has not delivered the title to the vehicle because of an unsatisfied debt on the vehicle, and that he has not completed the payments owed to the Plaintiff. He insists, however, that he has paid all the child support he owed and paid nearly $1.5 million to the Plaintiff. The Debtor maintains that his only remaining obligation to the Plaintiff is a property settlement, that he is not in willful contempt, and that he is unable to make any further payments due to his dire circumstances.

*Standard of Review*

Summary judgment may be granted pursuant to Federal Rule of Civil Procedure 56, applicable herein through Federal Rule of Bankruptcy Procedure 7056, if "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). Here, the Plaintiff, as "[t]he party seeking summary judgment bears the initial burden to demonstrate to the [Court] the basis for its motion for summary judgment and identify those portions of the pleadings, depositions, answers to interrogatories, and admissions which it believes show an absence of any genuine issue of material fact." *Hairston v. The Gainesville Sun*

4

*Pub. Co.*, 9 F.3d 913, 918 (11th Cir. 1993), *reh'g denied*, 16 F.3d 1233 (1994), citing *Taylor v. Espy,* 816 F.Supp. 1553, 1556 (N.D. Ga. 1993)(citations omitted).

In deciding a motion for summary judgment, the court "is not to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202, 212 (1986). Further, all reasonable doubts should be resolved in favor of the non-moving party, and "if reasonable minds could differ on any inferences arising from undisputed facts, summary judgment should be denied." *Twiss v. Kury*, 25 F.3d 1551, 1555 (11th Cir. 1994), citing *Mercantile Bank & Trust Co. v. Fidelity & Deposit Co.*, 750 F.2d 838, 841 (11th Cir. 1985). Presumptions or disputed inferences drawn from a limited factual record cannot support entry of summary judgment, and the court cannot choose between competing inferences. *See Allen v. Tyson Foods, Inc.*, 121 F.3d 642, 646 (11th Cir. 1997); *Raney v. Vinson Guard Serv., Inc.*, 120 F.3d 1192, 1196 (11th Cir. 1997).[9]

*Discussion*

In the Motion, the Plaintiff characterizes the Subject Obligations as domestic support obligations that are excepted from discharge under Section 523(a)(5) or, alternatively, asserts that they are excepted from discharge under Section 523(a)(15). Congress amended Section 523(a)(5)

---

[9] Once the party moving for summary judgment has identified materials demonstrating the absence of a genuine issue of material fact, the non-moving party cannot rest on mere denials or conclusory allegations, but must go beyond the pleadings and designate, through proper evidence such as by affidavits on personal knowledge or otherwise, specific facts showing the existence of a genuine issue for trial. *See* Fed. R. Civ. P. 56(e); *see also Matsushita Elec. Ind. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Johnson v. Fleet Finance, Inc.*, 4 F.3d 946, 948-49 (11th Cir. 1993); *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112 (11th Cir. 1993).

of the Bankruptcy Code in 2005 and also added Section 101(14A), which defines a "domestic support obligation."[10]  Section 523(a)(5) provides that:

> A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt– . . .
>
> (a)(5) for a domestic support obligation[.]

11 U.S.C. § 523(a)(5). A "domestic support obligation" is defined in Section 101(14A) as follows:

> The term "domestic support obligation" means a debt that accrues before, on, or after the date of the order for relief in a case under this title, including interest that accrues on that debt as provided under applicable nonbankruptcy law notwithstanding any other provision of this title, that is—
>
> (A) owed to or recoverable by—
>
>> (i) a spouse, former spouse, or child of the debtor or such child's parent, legal guardian, or responsible relative; …
>
> (B) in the nature of alimony, maintenance, or support (including assistance provided by a governmental unit) of such spouse, former spouse, or child of the debtor or such child's parent, without regard to whether such debt is expressly so designated;
>
> (C) established or subject to establishment before, on, or after the date of the order for relief in a case under this title, by reason of applicable provisions of—
>
>> (i) a separation agreement, divorce decree, or property settlement agreement;
>>
>> (ii) an order of a court of record; or
>>
>> (iii) a determination made in accordance with applicable nonbankruptcy law by a governmental unit; and
>
> (D) not assigned to a nongovernmental entity, unless that obligation is assigned voluntarily by the spouse, former spouse, child of the debtor, or such child's parent, legal guardian, or responsible relative for the purpose of collecting the debt.

11 U.S.C. § 101(14A).

---

[10] Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Pub.L. No. 109–8, 119 Stat. 23 ("BAPCPA").

The Plaintiff argues that the Subject Obligations qualify as "domestic support obligations" under this standard. To make this determination, courts are not bound by the labels used by the parties, but must further examine whether the obligation is "actually in the nature of support." *Benson v. Benson (In re Benson)*, 441 Fed. App'x 650, 651 (11th Cir. 2011), citing *Cummings v. Cummings*, 244 F.3d 1263, 1265 (11th Cir. 2001). A debt may be considered to be in the nature of support "if *at the time of its creation* the parties *intended* the obligation to function as support or alimony." *Cummings*, *supra*, 244 F.3d at 1265 (emphasis supplied). Courts have typically relied on certain factors or characteristics in performing their analysis of the nature of the obligation in question.[11]

The Plaintiff argues that many of these factors favor characterization of the Subject Obligations as domestic support obligations excepted from discharge under Section 523(a)(5). As noted above, in determining whether there is a genuine issue of material fact for purposes of summary judgment, competing inferences are not to be weighed and decided. In this case, however, the Debtor has not specifically disputed the allegations in the Statement of Facts, other than their legal characterization, and it appears that the only remaining analysis is applying the law

---

[11] In *Benson*, the Court stated the analysis should be informed by state law, but also listed the following factors for review based on the facts:

> (1) the agreement's language; (2) the parties' financial positions when the agreement was made; (3) the amount of the division; (4) whether the obligation ends upon death or remarriage of the beneficiary; (5) the frequency and number of payments; (6) whether the agreement waives other support rights; (7) whether the obligation can be modified or enforced in state court; and finally (8) how the obligation is treated for tax purposes.

*In re Benson*, 441 Fed. App'x. at 651.

to those facts.[12]  Further, even if the Subject Obligations do not fall within Section 523(a)(5) as domestic support obligations, they still may fall within the exception in Section 523(a)(15) as discussed below, which also excludes such obligations from discharge.

With regard to the applicable factors, first, the language of the Settlement Agreement itself suggests that the Subject Obligations constitute "domestic support obligations" as they relate to the parties' child.  Both the College Expense Payments and the Car Purchase obligation appear in a separate section entitled "Child Support."  In addition, the College Expense Payments are described as "post-majority child support" subject to modification consistent with state law (p. 7). Although such labels may not be binding for purposes of the Court's analysis herein, still, they are relevant to discerning the parties' intent.  The Settlement Agreement (p. 7) expressly provides that no alimony is to be paid to either party.  The Cash Payments to Plaintiff are set out in Paragraph 11 (p. 11) under the heading "Equitable Division of Property – Cash Payments to Wife." Of this amount, the sum of $8,000.00 is specifically stated to be child support for four (4) designated months (p. 11, note 1).  The Student Loan Debt is addressed on Page 14 under the heading "Equitable Division of Property – Debts."

Secondly, the Settlement Agreement recites that when it was created, the Debtor was in a stronger relative financial position than the Plaintiff for purposes of awarding child support (Debtor – "current monthly gross income of $39,507.00," Plaintiff – "imputed gross monthly income of $2,500.00)(*see* Settlement Agreement, p. 3).  This factor suggests that the Plaintiff did

---

[12] In his Response (p. 5), the Debtor states that "I paid all the child support and almost 1.5 million. All that is left is property settlement. No alimony…."  In *Benson, supra*, the court stated that the determination of whether a debt is a domestic support obligation is a legal conclusion.  441 Fed. App'x at 651 n. 3.  In addition, the Plaintiff bears the burden in proving an exception to discharge by a preponderance of the evidence.  *Grogan v. Garner*, 498 U.S. 279, 286-88, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991).

not have the means to support herself or their child on her own.[13] As for the third factor, despite the Plaintiff's statement to the contrary, it appears that the amount of the division may be examined with respect to the parties' treatment of the equitable divisions in the Settlement Agreement. They appear to be substantial and may have affected the Plaintiff's need for ongoing support. The fourth factor, whether an obligation ends upon marriage or death, is present with respect to the College Expense Payments, which is suggestive of support. For the fifth factor, the frequency and number of payments, the Settlement Agreement does address the frequency of payment for child support obligations to the Plaintiff. The sections specifically addressing the Subject Obligations, however, do not address such factors with regard to the parties' child other than appearing to be short-term (the College Expense Payments) or a one-time obligation (the Car Purchase). Overall, this factor on its own is not particularly helpful. The Cash Payments to Plaintiff do contain a payment schedule and the Student Loan Debt seems to imply one.

      The sixth factor, whether an agreement waives other support rights, is evident in the relinquishment of alimony as mentioned above. Such waiver is consistent with a characterization of the Cash Payments to Plaintiff as support, since the Plaintiff may have done so in consideration for the benefits received in the Settlement Agreement. The placement of this obligation within the overall structure of the Settlement Agreement as part of the equitable division of property, however, is also consistent with a property settlement. The seventh factor, whether the Subject Obligations are subject to modification and enforcement in state court, reflects an intent for the

---

[13] As seen in the Debtor's Response, as well as papers filed in his new bankruptcy case, the Debtor's financial circumstances appear to have changed since the time of the Settlement Agreement. Such changes, however, would need to be submitted to the appropriate state court for any modification to the parties' obligations to each other under the Settlement Agreement, and are not considered herein. *See In re Harrell*, 754 F.2d 902, 906-07 (11th Cir. 1985); *see also O'Brien v. Skubic (In re O'Brien)*, 574 B.R. 369, 376-77 (Bankr. N.D. Ga. 2017).

College Expense Payments and the Car Purchase to serve as support. Subparagraph (h) of the Child Support section in the Settlement Agreement provides that if the Debtor fails to make such payments, they may be collected through a continuing garnishment under O.C.G.A. § 19-6-30. Further, as seen in the Amended Agreement, the Cash Payments to Plaintiff were modified.

The last factor concerns how an obligation is treated for tax purposes. In Paragraph (k) of the "Child Support" section of the Settlement Agreement (p. 7), the Plaintiff agreed to allow the Debtor to claim their child as a "dependency exemption" on his income tax returns, which evidences support. In addition, the Plaintiff states that according to the "Equitable Division of Real Property" section of the Settlement Agreement (p. 9), the Debtor is allowed to receive the benefit of all tax deductions related to the marital home. Language in the Amended Agreement, however, provides that "[a]ll payments contained in this Paragraph by Husband to Wife [relating to the Cash Payments to Plaintiff] are in the nature of equitable division of property and shall not be taxable to Wife nor deductible by Husband for income tax purposes," indicating they were not intended for support.

Based upon the undisputed facts as alleged and a consideration of the relevant factors, the College Expense Payments and the Car Purchase appear to be in the nature of nondischargeable domestic support obligations under 11 U.S.C. § 523(a)(5). The Cash Payments to Plaintiff and Student Loan Debt present a closer call; however, because of the determination below regarding those payments, the Court need not finally decide that issue as to those payments to resolve the Motion.

With regard to the Cash Payments to Plaintiff and Student Loan Debt as noted above, the Plaintiff asserts that Section 523(a)(15) serves as an alternative basis for finding the Subject

10

Obligations nondischargeable in this chapter 7 case.[14] Section 523(a)(15) was also amended by BAPCPA, and provides that a discharge under Section 727 does not discharge an individual debtor from a debt:

> (a)(15) to a spouse, former spouse, or child of the debtor *and not of the kind described in paragraph (5)* that is incurred by the debtor in the course of a divorce or separation or in connection with a separation agreement, divorce decree or other order of a court of record, or a determination made in accordance with State or territorial law by a governmental unit[.]

11 U.S.C. § 523(a)(15)(emphasis supplied). The broad scope of the discharge exception in Section 523(a)(15) reflects Congress' recognition that "the economic protection of dependent spouses and children under state law is no longer accomplished solely through the traditional mechanism of support and alimony payments." *Gilman v. Golio (In re Golio)*, 393 B.R. 56, 61 (Bankr. E.D. N.Y. 2008), quoted in *Sherman v. Proyect (In re Proyect)*, 503 B.R. 765, 772-73 (Bankr. N.D. Ga. 2013).

Plaintiff contends that the effect of Section 523(a)(15) is "to make all divorce-related obligations subject to a presumption of nondischargeability." *Humiston v. Huddleston (In re Huddleston),* 194 B.R. 681, 685 (Bankr. N.D. Ga. 1996).[15] Further, according to the Plaintiff, it is undisputed that the Subject Obligations are divorce-related obligations and that same are owed to the Plaintiff (former spouse) and to the Debtor's child.

---

[14] Plaintiff adds that the Court may reserve a determination as to which subsection applies to which specific obligation within the Subject Obligations.

[15] As observed in *Proyect, supra,* 503 B.R. at 775, however, careful analysis is still required because given the purpose behind the enactment of Section 523(a)(15), "rendering every obligation to be nondischargeable simply because it is mentioned in a divorce settlement agreement seems to go far beyond what Congress intended."

11

Applying the standard of Section 523(a)(15), it appears that the Cash Payments to Plaintiff and Student Loan Debt were incurred in the course of the parties' divorce or in connection with the Settlement Agreement, and to the extent they are not otherwise nondischargeable under Section 523(a)(5), they would seem to fall within the scope of Section 523(a)(15). There may be some question regarding whether the Student Loan Debt meets this test, since it appears to be owed to a third party as opposed to a former spouse. However, the inclusion of hold harmless language (¶ 15, pp. 14-15) in the Settlement Agreement creates a new obligation in the Plaintiff's favor, thus satisfying Section 523(a)(15). *See Proyect, supra*, 503 B.R. at 774-76 (discussing the effect of such language).[16]

In view of the foregoing, it is

**ORDERED** that the Motion be, and the same hereby is, **GRANTED**; and, it is further

**ORDERED** that the Subject Obligations are excepted from discharge as follows: the College Expense Payments and the Car Purchase are found to be nondischargeable under 11 U.S.C. § 523(a)(5),[17] and the Cash Payments to Plaintiff and Student Loan Debt are found to be nondischargeable under 11 U.S.C. § 523(a)(15). Judgment will be entered for the Plaintiff.

The Clerk is directed to serve a copy of this Order upon counsel for the Plaintiff, the Debtor, the Chapter 7 Trustee, and the United States Trustee.

**[END OF DOCUMENT]**

---

[16] Even in the absence of indemnification language, the fact that state law grants the former spouse the (new) right to enforce such an obligation *may* render it nondischargeable under Section 523(a)(15), especially if the parties were not already co-obligors on the debt in question. *Id.* at 775-76; *compare In re Olson*, 557 B.R. 851, 853-56 (Bankr. W.D. Pa. 2016)(relevant inquiry under *Proyect* is the relative rights of the parties before and after the divorce agreement).

[17] Even if the Cash Payments to Plaintiff and Student Loan Debt are not otherwise nondischargeable under Section 523(a)(5), they do fall within the scope of Section 523(a)(15).